**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GRACIE ZAPATA, *an individual*, | **Case No. 1:14-cv-02027-EPG** |
| Plaintiff, | |
| | **ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION** |
| v. | |
| THE NEIL JONES FOOD CO., *a corporation*, | |
| Defendant. | (Docs. 12 and 13) |

## I.      Introduction

Plaintiff, Gracie Zapata ("Plaintiff" or "Zapata") is suing the Neil Jones Food Co. ("Defendant" or "NJFC") for failing to accommodate her disability and unlawfully terminating her employment in September 2013.  Plaintiff filed this action in the Fresno County Superior Court on October 28, 2014, alleging violations under the Fair Employment Housing Act, Cal. Gov. Code  § 12940, *et seq* ("FEHA") for : (1) failure to engage in good faith in the interactive process; (2)  failure to provide a reasonable accommodation for a disability; (3) disability discrimination – termination; as well as a claim for common law wrongful termination in violation of public policy.  Defendant removed this action to this Court on December 19, 2014. (Doc. 1).

Both parties have filed Motions for Summary Judgment/Summary Adjudication. (Docs. 12-18, 30-33).   After considering all of the parties' pleadings, the Defendant's Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART.[1]  Specifically, NJFC's request for summary judgment on punitive damages is GRANTED, however, all other requests for summary judgment are DENIED.  Plaintiff's Motion for Summary Adjudication is GRANTED IN PART on two issues: (1) that Plaintiff was a disabled individual at the time of her termination; and (2) Defendant knew Plaintiff was disabled at the time of her termination.  All of Plaintiff's other requests for relief in the motion are DENIED.

## II.     Summary of Material Undisputed Facts [2]

Plaintiff began working at the Neil Jones Food Company as a seasonal employee in 1989. (Doc. 31, pg. 2).  During the relevant time period, she worked as a Lab Technician in the Research and Development Department. *Id*.  Her duties included testing products such as salsa, paste, *etc…* for acidity, salt content, taste, consistency and a variety of other attributes. *Id*. Zapata's job duties also included cooking products to replicate samples provided by customers. *Id*. at pg. 3.

Plaintiff suffered from pain in June 2012, after she slipped and fell at her apartment. *Id*.  By early 2013, she noticed pain in her leg when she was standing, but it would go away while sitting. *Id*.  Between January 2012 and June 2013, her pain became increasingly worse. *Id*.

In May 2013, Zapata had an MRI and as diagnosed with early degenerative disc disease. *Id*; *Deposition of Lisa Frutos*, December 9, 2015 ("*Frutos Depo*.") at pgs. 34:23-35:13; (Doc. 13-3; pg. 26:23-27:13). This is a chronic condition. *Frutos Depo*. at pgs. 34:4-18; (Doc. 13-3. pg. 26:4-18).  After the MRI, Plaintiff went back to work, but could not bear the pain of being on her feet all day. *Zapata Declaration* dated February 23, 2016. ("*Zapata Dec'l*") at ¶ 9; (Doc. 13-2, pg. 3). She saw her health care provider, Robert McLeod, in early June 2013. *Id*.  In June 2013, Mr.

---

[1]  The Court has carefully reviewed and considered all of the pleadings including arguments, points, and authorities, declarations, and exhibits. Any omission to an argument or pleading is not to be construed that his Court did not consider the argument or pleading.

[2]  These facts are taken from the parties' joint statement of undisputed facts filed on May 13, 2016 (Docs. 30 and 31), and from other parts of the record that the Court has deemed undisputed after considering all of the parties' arguments and objections.

1  McLeod recommended that Plaintiff take continuous time off between June 3, 2013 through

2  October 15, 2013.  (Doc. 31, pg. 3; Doc. 13-2, pgs. 13-14).

3       On June 4, 2013, Zapata requested a leave of absence from June 3, 2013 to October 15, 2013.

4  *Id*.  Zapata requested protected leave under the California Family Rights Act ("CFRA")/Family

5  and Medical Leave Act ("FMLA").  *Id*. at pgs. 3-4; (Doc. 13-2, pgs. 13-14).  On the written

6  application for FMLA/CFRA leave, Zapata requested "continuous" leave from June 3, 2013, with

7  a "probable duration" of "3-5 months."  *Id*. at 4; (Doc. 13-2, pg. 13).  In connection with Zapata's

8  request for leave, Zapata provided NJFC with a "Certification of Health Care Provider"

9  ("Certification Form") that was filled out by her treating health care provider, Robert McLeod.

10  (Doc.  12-4 pgs. 194-195; Doc. 13-2, pgs. 15-16).  The Certification Form indicated that the

11  medical condition, or need for treatment, commenced on 6/7/12 up to 10/15/13.  In relevant part,

12  Mr. McLeod provided these answers to the following questions:

13       **Q**:  "Is the employee able to perform work of any kind?"

14       **A**:  Yes.

15

16       **Q**: "Is the employee unable to perform one or more of his/her essential functions of the
        employee's position?

17       **A**: Yes.[3]

18       **Q**:  "… Please identify the job functions the employee is unable to perform?"

19       **A**:  "Unable to stand for prolonged periods[;] unable to lift repeatedly."

20

21       **Q**: "Is it medically necessary for the employee to be off work on an intermittent basis or work
        less than the employee's normal work schedule in order to deal with the serious health
22       condition of the employee or family member?"

23       **A**: Yes, "patient requires continuous time off … will require multiple visits for physical
        therapy and specialty care."

24

25

26

27  _____
[3] Mr. McLeod did not have a job description for Zapata's R&D Lab Tech position at the time this form was
completed, so Ms. Zapata self-described her job duties to him.  His responses are based on her description. *McLeod*
28  *Deposition* dated December  9, 2015 ("*McLeod Depo*"), pgs. 13:8-20; (Doc. 13-3, pg. 40:8-20).

(Doc. 31, at pg. 5; Doc. 12-4, pgs. 194-195; Doc. 13-2, pgs. 15-16).  Michelle Heaton, Benefits Administrator for NJFC, processed Zapata's request for leave. (Doc. 31, at pg. 5). When Zapata first requested a leave of absence from June 3, 2013 through October 15, 2013, Zapata did not know whether the recommended physical therapy and specialty care needed would improve her condition. *Id*. at pg. 6.  Ms. Heaton did not discuss any accommodations with Zapata that would have allowed Zapata to continue working because Ms. Heaton understood Zapata was unable to return to work because of the representations made on the Certification Form. *Id*. at pg. 6.

Zapata's FMLA/CFRA protected leave expired on August 24, 2013. *Id*. at pg. 6.  On August 7, 2013, Ms. Heaton sent a letter to Zapata indicating that her protected leave would expire on August 24, 2013, and that NJFC was willing to provide her with an additional 30-day period of extended leave upon Zapata's submission of a request. *Id*. at pg. 6.  The letter indicated that Zapata's employment would be terminated on August 26, 2013, if Zapata did not either return to work, or submit a written request for an additional 30 days of leave. *Id*. at pg. 6.  At the time, Zapata was still undergoing physical therapy and other treatment, which had not helped.  *Id*. at pg. 6.  Zapata hoped that additional time off for treatment would improve her condition. *Id*. at pg. 6.  Accordingly, Zapata requested the additional 30 days of leave. *Id*. at 6.  NJFC granted the request.[4] *Id*. at pg. 6.  With the additional 30 days of leave, Zapata's leave was set to expire on September 23, 2013.  *Id*. at pg. 6.

On September 19, 2013, knowing she was about to lose her job with health insurance, Zapata called her boss, Dr. James Lee, NJFC's Director of Research and Development. Dr. Lee thought it would be a "good thing" to extend Zapata's leave of absence to October 15, 2013. *Id*. at pg. 7. He informed Zapata he would talk to Bill Strom, NJFC's Director of Human Resources, and get back to her.  Dr. Lee later spoke to Bill Strom, who indicated that the company could not extend the grace period for Zapata beyond September 23, 2013, due to a need to consistently apply the rules. *Id*. at pg. 7.  Dr. Lee then emailed NJFC's CEO, Matthew Jones, on September 20, 2013, and stated as follows:

---

[4] Defendant has requested that the Court take judicial notice of the fact that from Monday June 3, 2013 until Saturday August 24, 2013, is a twelve week period. (Doc. 12-3).  The request for judicial notice is granted.

Matt, … [Zapata] is going to have her doctor do an injection on the[sic] back today.  She asked if [the] company would extend her grace period to say October 15th as she would like to have some more time and want [sic] to come back to work by then.  Bill [Strom] stated very firmly that he cannot do this for consistency.  I just want to ask you if there is a possibility to extend her to October 15th as she has been strong [sic] technician for R&D lab for me for the last 10 years. If you don't want to extend her date, I will understand and that will be fine. I thought I [sic] ask you. Please advise." *Id*. at pg. 7; (Doc. 13-3, pgs. 156-157).

In response to Dr. Lee's inquiry, Mr. Jones, the CEO replied and indicated that Dr. Lee should defer to "Mandy," referring to NJFC's on-site Human Resources manager. *Id*. at 9.  Dr. Lee replied and stated that after conferring with Bill Strom (who would give direction to Mandi) and Michelle Heaton, "it will be best to terminate her at this point. We can rehire her when she recovers. …"  Mr. Jones, the CEO, wrote back and stated "Thanks James. We have a policy we have to follow.  Let [Zapata] know she is welcome to reapply once she feels better[.]" Dr. Lee then passed the message along to Zapata. *Id*. at 7.  NJFC denied Plaintiff's request for any leave beyond September 23, 2013.  Plaintiff was terminated in September 23, 2013. (Doc. 30, pg, 2).  At the time of her termination, she earned $18.08 per hour plus benefits, including but not limited to health insurance and short term and long term disability insurance. *Id*.

During Plaintiff's leave of absence, she applied for and was granted State Disability Insurance ("SDI") benefits, as well as benefits under a Short Term Disability policy. (Doc. 30, pg. 3).  In her claim for SDI benefits, which she signed June 4, 2013, Zapata declared under penalty of perjury that "for the period covered by this claim I was unemployed and disabled."  (Doc. 30, at pg. 3; Doc. 12-4, pgs. 196-208).  In her claim for SDI benefits, Zapata stated that her disability began June 3, 2013, and she checked the box indicating that she stopped working because of "injury, illness, or pregnancy." *Id*.  In the Physician/Practitioner Certificate portion of the SDI benefits claim form submitted by Zapata, Robert McLeod, who was the Physician's Assistant ("PA") treating Zapata under the direction of Dr. Rogeolio Hernandez, certified that beginning June 3, 2013, Zapata was "incapable of performing . . . her regular or customary work." *Id*. PA McLeod indicated in section B14 of the SDI claim form that he anticipated releasing Zapata to her regular and customary work on October 15, 2013, but he later signed a Physician/Practitioner Supplementary Certificate in connection with Zapata's claim for SDI benefits, in November

1    2013, certifying that Zapata continued to have a disabling condition that prevented her from

2    performing her regular or customary work. *Id.*  In the November 2013 Physician/Practitioner

3    Supplementary Certificate, PA McLeod stated that the then-current estimated date when Zapata

4    would be able to perform her regular or customary work was June 1, 2014. *Id.*

5        After her termination, Zapata applied for long-term disability benefits with Unum, an

6    insurance carrier. (Doc. 31, pg. 10).  Unum sent a form to NJFC in November 2013 seeking

7    information regarding whether NJFC could accommodate Zapata.  Ms. Heaton filled out the form

8    and faxed it back to Unum.  Ms. Heaton wrote, in relevant part, that "No accommodations [were

9    provided] besides an extended leave.  This position requires standing, walking, & lifting 95% of

10   the time."  (Doc. 31, pg. 10; Doc. 13-3, pg. 170). When asked, "Can the job be performed by

11   alternating sitting and standing ?" Ms. Heaton wrote, "No." (Doc. 31, pg. 10); (Doc. 13-3, pg.

12   171).  Zapata received long-term disability benefits under this policy which defines "disability" as

13   the employee's inability to perform the substantial and material duties of his or her regular

14   position. (Doc. 30, at pg. 4).

15       In August 2015, Zapata notified NJFC she was able to return to work with accommodations.

16   (Doc. 30, at pg. 4).  NJFC offered Zapata her job back, subject to successful drug and

17   immigration screening. (Doc. 31 at pg. 5).  She accepted the offer and requested various

18   accommodations. (Doc. 31 at pg. 5).  NJFC agreed to provide the requested accommodations.

19   (Doc. 31 at pg. 5).

20       Plaintiff is currently working in the same position as she was at the time of her termination,

21   and she is performing the job while alternating sitting and standing. (Doc. 31, pg. 10).  Zapata's

22   current accommodations include use of a stool, ability to alternate sitting and standing, and a

23   temporary exemption from climbing stairs pending a functional analysis. (Doc. 31 at pg. 5).  At

24   her deposition in April 2015, Zapata testified that her condition was no better than when she first

25   asked for the leave of absence in June 2013. (Doc. 30, pg. 4).

26   ///

27   ///

28   ///

### III.   The Parties' Positions

#### A.  Defendant's Motion

Defendant contends that it is entitled to summary judgment on all four causes of action because: (1) Plaintiff cannot meet her burden of proving that, at the time of her termination, she was able to perform the essential functions of her job; (2) Plaintiff cannot prove that any actionable conduct by Defendant was a substantial factor in causing Ms. Zapata any economic harm; and (3) Plaintiff cannot meet her burden of proving punitive damages by clear and convincing evidence. Defendant also argues that declarations Plaintiff submitted (Docs. 13-2 and 15-3) to rebut Defendant's arguments in opposition to the Motion for Summary Judgment should be stricken because they improperly attempt to contradict Plaintiff's deposition testimony, they contain hearsay, and lack foundation. (Docs. 14-3; 17-1).

#### B.  Plaintiff's Motion

Plaintiff argues she was disabled and that she was qualified to perform the essential functions of her job with reasonable accommodations at all times.  She contends that Defendant did not engage in a good faith interactive process because: (1) NJFC refused to extend her leave until October 15, 2013, so that she could have an additional month to recuperate and re-evaluate her medical limitations; and 2) NJFC failed to offer a reasonable accommodation at the work site in September 2013, so that she could perform the essential functions of her position.  Instead, the Defendant unlawfully terminated her on September 23, 2013.

Plaintiff requests an order granting summary adjudication on the following issues : (1) Plaintiff was an individual with a disability at the time of her termination on September 23, 2013; (2) Defendant knew Plaintiff had a disability at the time of her termination on September 23, 2013; (3) Plaintiff was qualified to perform the essential functions of her position, with or without accommodation; (4) Plaintiff was willing to engage in a timely good faith interactive process; (5) Defendant failed to engage in a timely good faith interactive process; (6) Defendant denied Plaintiff a reasonable accommodation by denying her a leave of absence until October 15, 2013; (7) Defendant would not have incurred an undue hardship by extending Plaintiff's leave of absence until October 15, 2013; (8) Defendant would not have incurred an undue hardship by

1  providing at-work accommodations so that Plaintiff could perform the essential functions of her

2  job; and (9) Defendant terminated Plaintiff's employment because of her disability.  (Doc. 13-1,

3  pgs. 5-6).

4  **IV.    Legal Standards for Summary Judgment**

5  Summary judgment is appropriate when it is demonstrated that no genuine issue as to any

6  material fact exists, and that the moving party is entitled to judgment as a matter of law.  Fed. R.

7  Civ. P. 56(c).  A genuine dispute exists if "the evidence is such that a reasonable jury could return

8  a verdict for the nonmoving party" and material facts are those "that might affect the outcome of

9  the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

10  Under summary judgment practice, "the moving party always bears the initial responsibility of

11  informing the district court of the basis for its motion, and identifying those portions of the

12  pleadings, depositions, answers to interrogatories, and admissions on file, together with the

13  affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."

14  *Celotex Corp. v. Catret*, 477 U.S. 317, 323 (1986).

15  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue,

16  a summary judgment motion may properly be made in reliance solely on the 'pleadings,

17  depositions, answers to interrogatories, and admissions on file.'"  *Id*.  Indeed, summary judgment

18  should be entered, after adequate time for discovery and upon motion, against a party who fails to

19  make a showing sufficient to establish the existence of an element essential to that party's case,

20  and on which that party will bear the burden of proof at trial.  *Id*. at 322.  "[A] complete failure of

21  proof concerning an essential element of the nonmoving party's case necessarily renders all other

22  facts immaterial."  *Id*.  In such a circumstance, summary judgment should be granted, "so long as

23  whatever is before the district court demonstrates that the standard for entry of summary

24  judgment, as set forth in Rule 56(c), is satisfied."  *Id*. at 323.

25  Cross-motions for summary judgment do not necessarily permit the judge to render

26  judgment in favor of one side or the other.  *Starsky v. Williams*, 512 F.2d 109, 112 (9th Cir.1975).

27  In judging the evidence at the summary judgment stage, the Court does not make credibility

28  determinations or weigh conflicting evidence, *Soremekun v. Thrifty Payless*, 509 F.3d at 984

1 (quotation marks and citation omitted), it must draw all inferences in the light most favorable to

2 the nonmoving party and determine whether a genuine issue of material fact precludes entry of

3 judgment, *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942

4 (9th Cir. 2011) (quotation marks and citation omitted). In resolving cross-motions for summary

5 judgment, the Court must consider each party's evidence.  *Johnson v. Poway Unified School*

6 *Dist.,* 658 F.3d 954, 960 (9th Cir. 2011). Plaintiff bears the burden of proof at trial, and to prevail

7 on summary judgment, he or she must affirmatively demonstrate that no reasonable trier of fact

8 could find other than for Plaintiff. *Soremekun v. Thrifty Payless, Inc.,* 509 F.3d at 984 (9th Cir.

9 2007).  Defendant does not bear the burden of proof at trial and in moving for summary

10 judgment, it need only prove an absence of evidence to support Plaintiff's case. *In re Oracle*

11 *Corp. Securities Litigation,* 627 F.3d 376, 387 (9th Cir. 2010).

12 **V.    Discussion**

13     **A.  Preliminary Matters**

14     As a threshold issue, the Court will address two of the Defendant's preliminary

15 arguments. First, Defendant contends that the Court should not consider portions of Plaintiff's

16 declarations filed on February 26, 2016 (Doc. 13-2) and March 11, 2016 (Doc. 15-3), on the basis

17 that they contradict Plaintiff's sworn testimony during her deposition on various topics. (Docs.12-

18 4, pgs. 1-110; Doc. 14-3; Doc. 17-1).  Defendant points to numerous alleged factual

19 contradictions including whether Plaintiff was required to stand while at work, discussions she

20 had with supervisors and employees regarding her medical condition and her leave status, and

21 whether she asked for an accommodation other than extended leave. *Id.*

22     The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an

23 affidavit contracting his or her prior deposition testimony. *Yeager v. Bowlin*, 693 F. 3d 1076,

24 1080 (9th Cir. 2012) quoting *Van Asdale v. Int'l Game Tech*, 577 F. 3d 989, 998 (9th Cir. 2009).

25 This is because "if a party who has been examined at length on deposition could raise an issue of

26 fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly

27 diminish the utility of summary judgment as a procedure for screening out sham issues of fact."

28 *Kennedy v. Allied Mut. Ins. Co*., 952 F.2d 262, 266 (9th Cir.1991). The sham affidavit rule may

be invoked only if a district court makes "a factual determination that the contradiction was actually a sham" and "the inconsistency between a party's deposition testimony and subsequent affidavit ... [is] clear and unambiguous." *Van Asdale v. Int'l Game Tech*., 577 F.3d at 998-999.

Here, the Court has reviewed all of Defendant's objections.  At first blush, several of the statements in Plaintiff's deposition appear to be contradictory to her deposition testimony. However, upon a close review of all of the evidence, the declarations are not clearly and unambiguously in conflict with her deposition testimony to warrant finding that the declarations are a sham. (Docs.12-4, pgs. 1-110; 14-3; 17-1).  Accordingly, Defendant's request to strike the affidavits on this basis are denied.  As discussed below, it will be up to a trier of fact to assess Ms. Zapata's credibility during trial.  It would not be proper for the Court to do so at the summary judgment stage given the nuances in the testimony.  The discussion below includes evidence, which after considering all of the parties' objections, is admissible for purposes of summary judgment.

Second, Defendant has argued that Plaintiff's request for summary judgment on the nine issues previously outlined is improper, because in order to prevail on a motion for summary judgment, she must establish all elements of her claims. (Docs. 13-1 and 14).  In her reply, Plaintiff clarified that she is seeking summary adjudication or partial summary judgment on the identified issues. (Doc. 16, pgs. 1-3).

The Court finds that Plaintiff's motion is procedurally proper because Rule 56 clearly permits a party to seek summary judgment on a part of a claim without seeking judgment on the whole claim. Fed. R. Civ. P. 56 ("A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought"). Moreover, the 2010 amendments to Rule 56 explain that "[t]he first sentence is added to make clear at the beginning that summary judgment may be requested not only as to an entire case but also as to a claim, defense, or part of a claim or defense." Fed. R. Civ. P. 56 Advisory Committee's Note.  Further, Rule 56(g) also supports the procedural validity of Plaintiff's motion as it states, "if the court does not grant all of the relief requested by the motion, it may enter an order stating any material fact … that is not genuinely in dispute and treating the fact as

1   established in the case." Fed. R. Civ. Pro. 56(g).  Given all of the above, the Court may properly

2   consider Plaintiff's Motion for Summary Adjudication. *Hansen v. Safeco Ins. Co. of Am.*, 2014

3   WL 3752114, at *4 (W.D. Wash. July 30, 2014).  A review of the pleadings reveals that summary

4   adjudication is appropriate for two of Plaintiff's requests – (1) whether Plaintiff was a disabled

5   person at the time of her termination, and (2) whether Defendant knew she was disabled at that

6   time.

7   ### B.  Whether Plaintiff was Disabled When She was Terminated

8   A person is physically disabled under FEHA if the individual has a physiological

9   condition that both (a) affects a specific body system, and (b) limits a major life activity. Cal.

10   Gov. Code § 12926 (m)(A)(B).  A physiological condition "limits" a major life activity if it

11   makes the achievement of the major life activity difficult. Cal. Gov. Code § 12926 (m)(B)(i).  The

12   term "major life activity" is broadly construed, and includes physical and social activities, as well

13   as working. Cal. Gov. Code § 12926 (m)(iii). *Gelfo v. Lockheed Martin Corp.*, 140 Cal. App. 4th

14   34, 46 (2006).

15   Defendant argues that Plaintiff has not come forward with evidence to establish that she

16   was disabled at the time of her termination, and that NJFC knew of her disability when she was

17   let go. (Doc. 14).  The Court disagrees and finds Defendant's arguments disingenuous in light of

18   the joint statement of undisputed facts, and its motion that Plaintiff was not able to perform the

19   essential functions of her job at the time of her termination due her back condition.  The

20   undisputed facts include testimony from Lisa Frutos that Plaintiff suffers from degenerative disc

21   disease, which is a chronic condition causing back pain. (Doc. 31, pg. 3; Doc. 13-3, pg. 26:4-18).

22   Chronic back pain and degenerative disc disease are recognized as disabilities under FEHA.

23   *Colmenares v. Braemar Country Club., Inc.*, 29 Cal. 4th 1019, 1024 (2003); *Spitzer v. Good Guys*

24   *Inc.*, 80 Cal. Appl. 4th 1376, 1383 (2000).

25   Similarly, Defendant knew that this condition was impacting Plaintiff's ability to perform

26   her job in June 2013 based on Mr. McLeod's CFRA/FMLA certification form. (Doc. 31, pg. 3;

27   Doc. 13-2, pgs. 13-14).  Moreover, Defendant knew Plaintiff's back condition had not improved

28   in September 2013 as reflected by the email Dr. Lee sent to CEO Jones requesting an extended

1   leave so that Plaintiff could seek additional treatment. (Doc. 31, pg. 7; Doc. 13-3, pgs. 156-157).

2   As such, Plaintiff s request for summary adjudication on these two issues will be granted.

3   However, summary adjudication will be denied on the other seven areas because, as discussed

4   below, genuine material facts are disputed related to these issues.

5       **C.  Plaintiff's FEHA Claims**

6       FEHA prohibits employers from refusing to hire, discharging, or otherwise discriminating

7   against employees because of their physical disabilities. Cal. Gov. Code, § 12940 (a).  Second, it

8   prohibits employers from failing to make reasonable accommodation for known physical

9   disabilities of employees. Cal. Gov. Code, § 12940 (m). Third, it prohibits them from failing to

10  engage in a timely and good faith interactive process with employees to determine effective

11  reasonable accommodations. Cal. Gov. Code, § 12940 (n).  Finally, in California, a discharge in

12  violation of FEHA gives rise to a common law claim for tortious discharge in violation of public

13  policy. *Stevenson v. Sup. Court*, 16 Cal.4th 880, 909 (1997); *City of Moorpark v. Sup. Court*, 18

14  Cal.4th 1143, 1159-1160 (1998) ("the FEHA clearly delineates a policy against disability

15  discrimination in employment").

16      To establish a prima facie case of disability discrimination under the FEHA, Plaintiff must

17  establish that: (1) she suffers from a disability; (2) she otherwise was qualified to do her job; and

18  (3) she was subjected to an adverse employment action because of her disability.  *Faust v.*

19  *California Portland Cement Co.*, 150 Cal. App. 4th 864, 886 (2007).  On a motion for summary

20  judgment, the plaintiff bears the burden of establishing a prima facie case of discrimination based

21  upon physical disability, and the burden then shifts to the employer to offer a legitimate,

22  nondiscriminatory reason for the adverse employment action. Once the employer has done so, the

23  plaintiff must offer evidence that the employer's stated reason is either false or pretextual, or

24  evidence that the employer acted with discriminatory animus, or evidence of each, which would

25  permit a reasonable trier of fact to conclude the employer intentionally discriminated. *Deschene v.*

26  *Pinole Point Steel Co.*, 76 Cal. App. 4th 33, 44 (1999).

27      In *Green v. State*, 42 Cal. 4th 254, 264 (2007), the California Supreme Court held that an

28  adverse employment action on the basis of disability is not prohibited if the disability renders the

1    employee unable to perform his or her essential duties, even with reasonable accommodation.

2    Additionally, a plaintiff must prove that he or she can perform the essential functions of the job in

3    order to prevail on a claim under FEHA.  *Green v. State*, 42 Cal. 4th 254 at 265.  "In disability

4    discrimination actions, the plaintiff has not shown that the defendant has done anything wrong

5    until the plaintiff can show he or she was able to do the job with or without reasonable

6    accommodation." *Id*. Thus, plaintiff bears the burden of establishing that she was able to perform

7    the essential functions of her position, with or without reasonable accommodation, at the time of

8    her termination.

9          *D*.     ***The Interactive Process***

10       The interactive process is an informal process designed to identify a reasonable

11    accommodation that will enable the employee to perform his or her job effectively.  "The

12    employee must initiate the process unless his or her disability and the resulting limitations are

13    obvious. Once initiated, the employer has a continuous obligation to engage in the interactive

14    process in good faith. Both the employer and the employee have the obligation to 'keep

15    communications open' and neither has 'a right to obstruct the process.' Each party must

16    participate in good faith, undertake reasonable efforts to communicate its concerns, and make

17    available to the other information which is available, or more accessible, to one party. Liability

18    hinges on the objective circumstances surrounding the parties' breakdown in communication, and

19    responsibility for the breakdown lies with the party who fails to participate in good faith."

20    *Swanson v. Morongo Unified Sch. Dist*., 232 Cal. App. 4th 954, 971-972, (2014), as modified on

21    denial of reh'g (Dec. 23, 2014) citing *Scotch v. Art Institute*, 173 Cal. App. 4th 986, 1013-1014

22    (2009).  "[T]he fact that an employer took some steps to work with an employee to identify

23    reasonable accommodations does not absolve the employer of liability... If the employer is

24    responsible for a later breakdown in the process, it may be held liable." *Nadaf–Rahrov v. Neiman*

25    *Marcus Group, Inc*. 166 Cal. App. 4th 952, 985 (2008).

26       Under Title 2 of the Cal. Gov't Code § 11069, an employer shall initiate an interactive

27    process when:

28

(1) an applicant or employee with a known physical or mental disability or medical condition requests reasonable accommodations, or

(2) the employer … otherwise becomes aware of the need for an accommodation through a third party or by observation, or

(3) the employer … becomes aware of the possible need for an accommodation because the employee with a disability has exhausted leave … for the employee's own serious health condition under the CFRA and/or the FMLA, …and yet the employee or the employee's health care provider indicates that further accommodation is still necessary for recuperative leave or other accommodation for the employee to perform the essential functions of the job. …"

2 Cal. Gov't Code § 11069(b).  The appropriate action for the employer to take once its obligation to initiate an interactive process will depend on the specific facts and circumstances of each case. Once the employer takes appropriate action to initiate an interactive process, the employee may have additional obligations again, depending on the facts and circumstances of each case.

### E. Analysis

In this instance, it is undisputed that NJFC engaged in the interactive process in June 2013 after receiving the Certification Form from Mr. McLeod, Plaintiff's health care provider, and granting her leave. (Doc. 32, pg. 3).  As Plaintiff concedes, there was also no violation of the interactive process in August 2013. At that time, NJFC contacted Plaintiff and granted her a thirty day leave of absence. *Id*.

The relevant time at issue is in September 2013, when Plaintiff requested an additional leave until October 15, 2013, and NJFC denied the request. Plaintiff argues the extended leave was a request for a reasonable accommodation because she intended to return to work at the end of the leave period. *Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245, 263 (2000) ("Holding a job open for a disabled employee who needs time to recuperate or heal is in itself a form of reasonable accommodation…").  Moreover, Plaintiff argues there was inconsistency on the Certification Form Mr. McLeod filled out in June 2013.  On one hand, Plaintiff requested leave through October 15, 2013, and Mr. McLeod indicated Zapata would need continuous leave through that same date.  On the other hand, the Certification Form states that Zapata was able to perform some work, except that she could not stand for prolonged periods, and was unable to lift repeatedly.  (Doc.12-4, 194-195).  Plaintiff argues that because of this inconsistency, NJFC had

an obligation to seek additional clarification from Plaintiff about what, if any, accommodations may have been available that would have allowed her to retain her employment when her leave request was denied.  If it had done so, Defendant would have realized that it was Mr. McLeod's opinion that she could in fact perform some light work. (Doc.12-4, pgs. 194-195; *McLeod's Deposition* dated December 9, 2015 ("*McLeod's Depo*") Doc. 16-1, pgs. 20:15-22:5).

Relatedly, Plaintiff contends that deposition testimony reveals that although the Certification Form indicated Plaintiff needed continuous time off until mid-October, Mr. McLeod meant to say that she would only need short periods of time off to attend therapy and appointments over a long period of time, rather than continuous time off without any work at all. (*McLeod's Depo*, Doc. 13-3, pgs. 53:25-54:23).  Finally, Plaintiff argues that her medical condition has not changed since September 2013, and she is currently performing her job after Defendant made accommodations by permitting her to sit on a stool during the course of the day. (*McLeod Depo*., Doc. 13-3, pgs. 48:14-52:25) (Mr. McLeod stating no change in condition from June 2013 until May 2015).  Therefore, Plaintiff asserts that a reasonable accommodation was available at the time of her termination and Defendant would have realized that, if it had made inquiries during the interactive process. (Doc. 13-3 pgs. 48:14-52:25).

In support of her arguments, Plaintiff relies on her declaration wherein she contends that prior to her termination, she told Dr. Lee that she was able to work, as long as she would not be required to stand all day long.  She contends Dr. Lee indicated that he did not have any "desk work" for her which she understood to mean that she would not be allowed to use a stool.[5] (*Zapata Dec'l* dated February 23, 2016 (Doc. 13-2, pg. 5 ¶ 24); (Doc. 12-4; pgs. 96:18-98:23; Doc. 13-3 pgs. 43:6-50:10, *Dr. Lee's Deposition* ("*Dr. Lee's Depo*"), dated June 23, 2015, Doc.13-3 pgs.129:6-136:10). Further, she also points to the fact that Mr. McLeod allegedly contacted NJFC and asked if there could be some accommodation for Plaintiff and was told there

---

[5]  Defendant has objected to this portion of Plaintiff's declaration on the basis that it contradicts her prior deposition testimony. (Doc. 14-3, pg. 8-9). This objection is overruled as the deposition testimony of Plaintiff and Dr. Lee are not clearly and unambiguously inconsistent. Both indicate there was a conversation, however, what was said, and the parties' understanding of the conversation is disputed.

1   was no light work available.[6] (*McLeod Depo*. Doc. 13-3, pgs. 55:20-58:11).  Lastly, she relies on

2   forms filled out by NJFC when Plaintiff applied for long-term disability benefits with Unum,

3   wherein Ms. Heaton from NJFC noted that the position required standing, walking, and lifting

4   95% of the time, and that the job could not be performed by sitting and standing.  Plaintiff

5   contends these facts establish that Defendant was unwilling to make any accommodation for her,

6   so that she could perform her job. (Doc. 13-3, pgs. 170-172).  She argues that this understanding

7   – that the job could not be done while sitting – resulted in Plaintiff believing she could not work,

8   and filing for disability benefits.  Plaintiff also alleges that her health care providers completed

9   the disability certifications indicating that she was unable to perform her customary or regular

10  duties of her job, because they also believed that no accommodations were available.

11          In opposition, Defendant contends no liability exists because Plaintiff never requested any

12  other accommodation from anyone at NJFC (including Dr. Lee) - other than an extended leave -

13  until after she was terminated.  (*Zapata Depo*. Doc. 12-4: pgs. 64:4-65:12; pgs. 94:7-95:21; *Dr.*

14  *Lee's Depo*. Doc. 12-4, pgs. 217:3-218:25).   NJFC further argues that an employee who brings a

15  claim under section 12940(n) for failure to engage in the interactive process bears the burden of

16  proving that a reasonable accommodation was available before an employer can be held liable

17  under the statute.  *Nadar-Rahrov v. Neiman Marcus Group*, 166 Cal. App. 4th at 952.  Here,

18  NJFC argues evidence establishes that Plaintiff was in too much pain to work with any

19  accommodation from September 2013 through at least June 2014.  As such, Plaintiff's request for

20  the extended leave was not an appropriate accommodation because she was in too much pain and

21  cannot establish that she was able to return to work in October 2013.  *See* 2 CCR § 11068(c)

22  (granting or extending a leave may be a reasonable accommodation "provided that the leave is

23  likely to be effective in allowing the employee to return to work at the end of the leave ...."); see

24  ───────────────

25  [6]  Defendant objected to this evidence on numerous grounds including that Mr. McLeod previously testified that he did not have any recollection of speaking with anyone at NJFC about Plaintiff's condition, and because the statement is hearsay, not subject to any exception.  (Doc. 14-2, pgs. 9-10, ¶ 24; Doc. 14-3, pgs. 13-14).  Defendant also argues

26  that McLeod testified that information about a lack of accommodation could have come from Zapata herself, rather than someone at NJFC.  Defendant's objections are overruled as a review of the transcript reveals Mr. McLeod gave

27  this testimony after his recollection was refreshed.  (Doc. 13-3, pg. 55:21- 62:3).  Moreover, Defendant's objections go to the weight of the evidence rather than the admissibility. Mr. McLeod testified he routinely contacts employers

28  when completing disability forms.  He is permitted to testify about his normal practices.  It will be up to a trier of fact to assess Mr. McLeod's credibility.

also *Hanson v. Lucky Stores, Inc.*, 74 Cal. App. 4th 215, 226 (1999) ("We hold that a finite leave can be a reasonable accommodation under FEHA, provided it is likely that at the end of the leave, the employee would be able to perform his or her duties.").

To support this position, Defendant relies on Mr. McLeod's testimony that, from at least September 2013 through at least June 2014, Zapata was unable to work due to her pain level alone. For example, on September 4, 2013, Zapata reported a pain level of 7 out of 10. (*McLeod Depo*. at pgs. 35:21-23, Doc. 12-4, pgs. 176:21-23) (a reported pain level of 7 out of 10 is so severe that "you wouldn't be able to work with a 7 out of 10") (*McLeod Depo*., pgs. 38:9-39:11, Doc. 12-4, pgs. 177:9-178:11).  On December 11, 2013, Zapata reported an increase in her pain level, which meant that she still could not work. (*McLeod Depo*. pgs. 39:25-40:24, Doc. 12-4, pgs. 178:25-179:24).  On April 15, 2014, Zapata reported that her pain level was 8 out of 10, and in McLeod's opinion, she still could not work based on the level of her pain. *Id*.  On June 11, 2014, McLeod concluded that Zapata's condition had not changed since her prior visit. (*McLeod Depo*., pgs. 42:4-21, Doc. 124 pgs. 180:4-21).

Similarly, Defendant argues that Plaintiff's allegations of pain during that time period are supported by the disability certifications completed by her medical providers.  For example, when certifying Plaintiff's application in June 2013, McLeod indicated that Zapata was not capable of performing her regular or customary work, and that she would not be able to do so until October 2013.  (Doc. 30, pg. 3; Doc. 12-4, pg. 200-202).  In November 2013, McLeod changed the date that Plaintiff would be able to perform her regular or customary work to June 2014.  (Doc,. 30, pg. 3; Doc. 12-4, pgs. 204-205).  On November 11, 2014, Nurse Practitioner Lisa Frutos completed a form stating her opinion that Zapata could not "sustain *any* work activity for five days a week, eight hours a day, fifty-two weeks a year" because of Zapata's pain. (*Frutos Depo* at pgs. 17:18 to 18:12, Doc. 12-4, pgs. 144: 18-145:12).

Defendant also points to Plaintiff's own actions. When applying for disability benefits in June 2013, Plaintiff declared under penalty of perjury that she was disabled.  (Doc. 30, pg. 3; Doc.12-4, pgs.197-199).  Defendant also relies on conversations Plaintiff had with Ashley Forbes, Senior Disability Specialist at Unum, when Zapata applied for disability benefits.  NJFC contends

1    that during this process, Plaintiff advised Ms. Forbes that she would be out of work forever due to

2    pain even if she could sit to do her job. (*Declaration of Ashley Forbes* ("*Forbes Dec'l*") dated

3    November 13, 2015, ¶¶ 4-5, Doc 12-6, pgs. 2-3).

4         Defendant contends that given the above, its actions are in compliance with the law.

5    Plaintiff never requested an accommodation other than an extended leave, and the health care

6    providers' certifications indicated that Plaintiff was not able to return to work. Once Plaintiff's

7    health care providers indicated she could work, NJFC offered Zapata her job back, and she has

8    been employed with accommodations since that time.

9         Here, a central issue to all of Plaintiff's claims is whether she was able to perform the

10   essential duties of position with or without accommodation in September 2013. *Green v. State*, 42

11   Cal. 4th at 264.  Another issue is whether a reasonable accommodation was available during the

12   interactive process in September 2013.  The Court notes that there is a split of authority on the

13   availability of a reasonable accommodation.  Several cases have held that that the employee bears

14   the burden of proof that a reasonable accommodation was possible. *Nadar-Rahrov v. Neiman*

15   *Marcus*, 166  Cal. App. 4th at 985; *Scotch v. Art Institute of Cal*., 173 Cal. App. 4th 968, 1018-

16   1019 (2009) (the employee must be able to identify an accommodation that was objectively

17   available at the time the interactive process should have occurred.). Other cases, however, have

18   held that employer liability for failing to engage in the interactive process does not depend on

19   showing a reasonable accommodation was possible. *Wysinger v.Automobile Club of  So. Calif*.

20   157 Cal. App. 4th  413, 425 (2007); *Claudio v. Regents of Univ. of Calif.*, 134 Cal. App. 4th 224,

21   254 (2005) (it cannot be known whether an alternate job would have been found based on the

22   employer's failure to  engage in the interactive process); *Wilson v. County of Orange*, 169 Cal.

23   App. 4th 1185, 1193 (rejecting a claim based on delay in agreeing to requested accommodation).

24   The Court finds the reasoning in the *Nadar-Rahrov* line of cases - requiring that an employee

25   bears the burden of proof that a reasonable accommodation was possible before a failure to

26   engage in the interactive process can be established - more persuasive.[7]

27   _____

28   [7] Until this split is resolved, trial courts are free to choose between the conflicting decisions. *Auto Equity Sales, Inc. v. Sup. Ct*. 57 Cal. 2d 450, 456 (1962).

A review of all of the evidence reveals there is a genuine dispute of material facts regarding whether Plaintiff could perform the essential duties or the position, and whether a reasonable accommodation was available.  As outlined above, there is conflicting evidence with regard to (1) how much pain was Plaintiff experiencing in September 2013 and beyond, *i.e.* could she have performed her job duties at that time if permitted to sit, or would she have been able to return to work at the end of her request for extended leave.  On one hand, Mr. McLeod testified Plaintiff was in so much pain she could not work (*McLeod Depo*, Doc. 12-4, pgs. 176:21-23; 177:9-178:11; 178:35-179:24; 180:4-21), but he also testified that she could have performed light work during the relevant time period (*McLeod Depo*., Doc. 16, pgs. 20:15-22:5); (2) whether Plaintiff or Mr. McLeod contacted anyone at NJFC and requested any accommodation, and relatedly, how their beliefs about the availability of an accommodation influenced their responses on disability and leave application/certification forms (*Zapata Dec'l* dated at pg. 2, ¶ 9, Doc. 13-2, pg. 3; *McLeod Depo*, 13-3, pgs. 55:20-58:11); and (3) what Plaintiff said to Ms. Forbes during the disability application process with Unum, since Plaintiff contends she never told Ms. Forbes that she could not work if she were permitted to sit.  (*Zapata Dec'l* dated March 11, 2016, pg. 2 at ¶ 6-7, Doc. 15-3, pg. 2, ¶ 6);  *Forbes Dec'l* at ¶¶ 4-5, Doc 12-6, pgs. 2-3).

In light of the above, there are too many genuine material facts in dispute for the Court to assess liability at this stage in the proceedings. The Ninth Circuit Court of Appeals "has set a high standard for the granting of summary judgment in employment discrimination cases." *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1410 (9th Cir. 1996).  The Court has explained, "[w]e require very little evidence to survive summary judgment in a discrimination case, because the ultimate question is one that can only be resolved through a 'searching inquiry'—one that is most appropriately conducted by the factfinder, upon a full record.  Besides an overall more particularized factual inquiry, a trial provides insight into motive, a critical issue in discrimination cases.  The existence of intent to discriminate may be difficult to discern in depositions compiled for purposes of summary judgment, yet it may later be revealed in the face-to-face encounter of a full trial." *Lam v. Univ. of Hawaii*, 40 F.3d 1551, 1564 (9th Cir.1994) (internal quotations omitted).

Here, it is appropriate that a trier of fact weigh the evidence and make credibility determinations on the issues outlined above.  Therefore, the Court is unable to grant Defendant's Motion for Summary Judgment on the causes of action, as well as on whether Defendant engaged in any actionable conduct that caused Plaintiff economic harm.  Similarly, the Court denies Plaintiff's remaining request for summary adjudication on the issues of: (1) whether Plaintiff was qualified to perform the essential functions of her position, with or without accommodation; (2) whether she was willing to engage in a timely good faith interactive process; (3) whether Defendant failed to engage in a timely good faith interactive process; (4) whether Defendant denied Plaintiff a reasonable accommodation by denying her a leave of absence until October 15, 2013; (5) whether Defendant would not have incurred an undue hardship by extending Plaintiff's leave of absence until October 15, 2013; (6) whether Defendant would not have incurred an undue hardship by providing at-work accommodations so that Plaintiff could perform the essential functions of her job; and (7) whether Defendant terminated Plaintiff's employment because of her disability.

### F.   Punitive Damages

Defendant has requested summary judgment on Plaintiff's request for punitive damages arguing that there is no evidence to support such claims.  Under California law, punitive damages may be appropriate "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294.  Under California Civil Code § 3294, before a corporation can be held liable for punitive damages, the plaintiff must show, by clear and convincing evidence, that "an officer, director, or managing agent of the corporation" authorized, ratified, or was personally involved in the malicious or oppressive conduct. *Roby v. NcKesson Corp.,* 47 Cal. 5th 686,767 (2009).

Malice is defined by Cal. Civ. Code § 3294(c) as "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." *Id*.  Oppression is defined as "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." *Id*.  "Malice" and "oppression" may be inferred from the

20

circumstances of a defendant's conduct. *Monge v. Superior Court*, 176 Cal. App. 3d 503, 511 (1986). A plaintiff may establish malice "by indirect evidence from which the jury may draw inferences." *Taylor v. Superior Court*, 24 Cal.3d 890, 894, (1979).

Plaintiff argues that malicious conduct exists from NJFC executives because emails from Mr. Jones, NJFC's CEO, establish that he knew Zapata wanted to return to work by October 15, 2013. Instead of granting the extended leave, Jones instructed Dr. Lee to advise her that "she is welcome to apply once she feels better." (Docs. 15-1, pg. 17-18). She also argues proof of malice and oppression can be established by: (1) Ms. Heaton's representation to Unum stating that no accommodation other than an extended leave could be offered despite the fact that Plaintiff is performing her job now with sitting accommodations; and (2) the testimony of Mr. Jones at his deposition wherein he claimed to have believed Zapata only wanted an extension of her health insurance coverage, and not an extension of her leave of absence until October 15, 2013, despite Dr. Lee's email explicitly stating that Zapata wanted to extend her leave until October 15. (Doc. 13-3, pgs. 156-157; pgs. 160:8-162:9).

In this instance, even drawing all inferences in favor of the Plaintiff, neither the undisputed or the disputed facts establish despicable conduct carried on in willful and conscious disregard of Plaintiff's right or safety. It merely shows a possible failure to engage in the interactive process, and a potential failure to accommodate Plaintiff's disability. Even if a jury were to resolve Plaintiff's claims in her favor, a failure to engage in the interactive process and/or accommodate a disabled worker, without more, does not constitute clear and convincing evidence of intentionally oppressive or malicious conduct required for punitive damages. *Ducre v. Veolia Transportation*, 2011 WL 13046882, at *29 (C.D. Cal. Mar. 29, 2011). see also *Am. Airlines, Inc. v. Sheppard*, 96 Cal. App. 4th 1017, 1050-1051 (2002) (holding that although defendants had been "disingenuous" and acted with "willful and conscious disregard" of the plaintiff's interests, their conduct did not "reach the level of despicability found in cases in which punitive damages were found to be proper").

///

///

1   V.      **Conclusion and Order**

2           Given all the above, it is hereby ordered as follows :

3           (1) Defendant's Motion to Summary Judgment (Doc. 12) is GRANTED IN PART AND

4               DENIED IN PART.  Specifically, Defendant's Motion for Summary Judgment is

5               granted as to punitive damages and denied with regard to all other requests for relief;

6               and

7           (2)  Plaintiff's Motion for Summary Adjudication (Doc. 13) is GRANTED IN PART

8               AND DENIED IN PART as follows: (1) Plaintiff was an individual with a disability at

9               the time of her termination on September 23, 2013; and (2) Defendant knew Plaintiff

10              had a disability on September 23, 2013.  All of Plaintiff's other requests for summary

11              adjudication are DENIED.

12

13  IT IS SO ORDERED.

14      Dated:   **September 12, 2016**          /s/ _Erica P. Grosjean_

15                                              UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28